**James L. BINDER, Individually, and Benjamin L. Tyber, in his capacity as Trustee for Benefit of Stiefel, Tyber, Jones, McDonald Pension Plan, Plaintiffs,**

v.

**GORDIAN SECURITIES, INC.; Gordian Investors, Inc., as General Partner of Mineral Investors, Ltd.; Mineral Investors, Ltd.; James A. Beck, James F. DeLay and Joseph A. Thompson, Defendants.**

No. 1:89–CV–178–RHH.

United States District Court,
N.D. Georgia,
Atlanta Division.

June 26, 1990.

 

F.2d 654; *Wei v. State of Hawaii,* 763 F.2d 370, 372 (9th Cir.1985).

George R. Ference, Gerald B. Kline, Bauer Deitch & Raines, Atlanta, Ga., for plaintiffs.

Paul W. Stivers, Theodore Joseph Sawicki, Rogers & Hardin, Atlanta, Ga., for defendants.

## ORDER

ROBERT H. HALL, District Judge.

This case is before the court on: (1) plaintiffs' Motion for Partial Summary Judgment; (2) defendant Joseph A. Thompson's Motion for Summary Judgment and for Award of Attorneys' Fees; (3) defendants' Motion for Leave to Supplement the Record in Further Opposition to Plaintiffs' Motion for Partial Summary Judgment; and (4) plaintiffs' Motion for Leave to Supplement the Record in Connection with Pending Cross Motions for Summary Judgment. The court DENIES plaintiff's Motion for Partial Summary Judgment and DENIES IN PART and GRANTS IN PART Thompson's Motion for Summary Judgment. The court GRANTS both Motions for Leave.

## BACKGROUND

In the summer of 1987, defendant Beck, as a representative of defendant Gordian Securities, Inc. ("Gordian Securities"), solicited plaintiffs to invest in the defendant partnership Mineral Investors, Ltd. ("Mineral Investors"). The partnership's purpose was to loan money to a limestone rock quarry business, Erwin Minerals Corporation ("Erwin Minerals"), operating in Savannah, Tennessee. Gordian Securities acted as the underwriter and broker/dealer in offering the partnership investments. Its wholly-owned subsidiary, defendant Gordian Investors, Inc. ("Gordian Investors"), acted as the offering partnership's general partner. The individual defendants were officers or directors of Gordian Securities and/or Gordian Investors.

Pursuant to defendant Beck's solicitation, plaintiff Binder subscribed for three units of the partnership for a total investment of $150,000.00 and plaintiff Tyber

subscribed for two units for a total investment of $100,000.00 on behalf of his self-directed portion of the named pension plan. Defendants sold several other subscriptions to reach the maximum offering limit of $750,000.00.

Defendants did not register these securities. Instead, they sought to exempt them from registration under various state and federal securities law provisions. According to the Mineral Investors Private Placement Memorandum dated September 1, 1987, p. 18, defendants relied on the registration exemptions provided by §§ 3(b) and 4(2) of the Securities Act of 1933 ("the 1933 Act"), codified at 15 U.S.C. §§ 77c and 77d, and rules promulgated thereunder in connection with SEC Regulation D, found at 17 C.F.R. § 230.505. Defendants accordingly filed a "Form D Notice of Sale of Securities pursuant to Regulation D § 4(6) and/or Uniform Limited Offering Exemption" ("Notice of Sale") with the SEC in October, 1987. Defendants also attempted to satisfy Georgia Blue Sky exemption requirements, discussed in more detail *infra.*

Upon its formation, Mineral Investors loaned the capital raised from its subscribers to or on behalf of Erwin. According to plaintiffs, "Erwin's less-than-stellar operation of the quarry resulted in loan defaults and the partnership's ultimate foreclosure upon the rock quarry, which collateralized the loan." Memorandum of Law in Support of Plaintiffs' Motion for Partial Summary Judgment at 2. The quarry, which the partnership bid upon in foreclosure, is currently idle.

Plaintiffs then filed this lawsuit, alleging violations of the Securities Acts of 1933 and 1934, the Georgia Securities Act of 1973, and the Florida Securities and Investor Protection Act in connection with defendants' offering of the securities. Because he did not personally solicit their investments, plaintiffs allege that defendant Thompson is secondarily liable under the above provisions as a "controlling person" of defendants Beck and Gordian Securities. Plaintiffs' Complaint also alleges claims concerning the management of the partnership.

Plaintiffs now move for summary judgment on their claim under the Georgia Securities Act of 1973. They maintain that defendants were obliged to satisfy Georgia's Uniform Limited Offering Exemption, found at O.C.G.A. § 10–5–9(16), and failed to do so. Defendants counter that they were not required to satisfy that particular exemption. They argue that they need only have satisfied one of Georgia's many exemption provisions and in fact did comply with the exemption found at O.C.G.A. § 10–5–9(13). Defendants also argue that under O.C.G.A. § 10–5–14(d)(1), plaintiffs lost their Georgia Securities Act cause of action because they did not accept defendants' purported offer of recision.

Defendant Thompson also moves for summary judgment. He argues that he is not a "controlling person" and thus cannot be liable as one under federal or Georgia law. Moreover, Thompson argues that he cannot be liable under Florida law because it has no provision for "controlling person" liability. He also argues that he is entitled to his reasonable attorneys' fees incurred in defending against the Florida law claim.

## ANALYSIS

1. **Plaintiffs' Motion for Partial Summary Judgment**

■ To begin, the court rejects defendants' argument that O.C.G.A. § 10–5–14(d)(1) bars plaintiffs from bringing this action. O.C.G.A. § 10–5–14(a) confers a civil cause of action on purchasers of securities sold in violation of the Georgia Securities Act of 1973. Subsection (d)(1), however, prohibits actions by any buyer who:

> received a written offer, before suit and at a time when he owned the security, to repay in cash or by certified or official bank check, within 30 days from the date of acceptance of such offer in exchange for the securities, the fair value of the consideration paid ... together with interest on such amount for the period from the date of payment down to the date of repayment, ..., and:

(A) Such offeree does not accept the offer within 30 days of its receipt; . . . .

O.C.G.A. § 10–5–14(d)(1). Defendants argue that they made a written offer of recision to each plaintiff in November, 1987 which neither plaintiff accepted. Therefore, defendants conclude, O.C.G.A. § 10–5–14(d)(1) bars plaintiffs' Securities Act claim.

Defendants' purported offers of recision, however, were not the type required by O.C.G.A. § 10–5–14(d)(1). The offers, contained in letters dated November 30, 1987, told each plaintiff that "you [have] the opportunity to rescind your subscription to the partnership by letter notice to us within 72 hours after receipt of this letter." These offers fail to meet the specific requirements of O.C.G.A. § 10–5–14(d)(1) in that they do not (1) offer repayment of plaintiffs' consideration; (2) within 30 days from the date of acceptance with (3) accrued interest thereon. The court thus finds that defendants' letters dated November 30, 1987 do not bar plaintiffs' cause of action under the Georgia Securities Act of 1973.

■ Plaintiffs are not, however, entitled to partial summary judgment under section 10–5–9(16) of that Act. O.C.G.A. § 10–5–5 provides that all securities offerings must be either registered under O.C.G.A. § 10–5–5 and § 10–5–6 or exempt from registration under O.C.G.A. § 10–5–8 or § 10–5–9. O.C.G.A. § 10–5–9 provides a number of different exemption procedures, including the Uniform Limited Offering Exemption found at O.C.G.A. § 10–5–9(16). O.C.G.A. § 10–5–9(16) authorizes the Georgia Commissioner of Securities to "create by rule a limited offering transactional exemption and procedures pertaining thereto." Under that authority, the Commissioner promulgated Rule 590–4–5–.01:

> Pursuant to subsection (d) of code section 10–5–10 [granting the Commissioner the general power to make rules] and paragraph (16) of code section 10–5–9 . . . transactions involving securities offered or sold in compliance with Rules 501, 502, 503, 505 and 506 of SEC Regulation D . . . are exempt from the registration provisions of code section 10–5–5 of said code, provided the requirements of paragraph (16) of code section 10–5–9 and the following conditions and limitations are met.

Plaintiffs argue that because defendants filed for an exemption under Rule 505 of Regulation D with the S.E.C., this language required them to exempt their offering under paragraph (16) and Rule 590–4–5–.01. Since defendants did not satisfy the requirements of paragraph (16) and Rule 590–4–5–.01, plaintiffs contend that they are entitled to summary judgment.

The court disagrees. O.C.G.A. § 10–5–9 expressly exempts from registration offerings that comply with *"any"* of its sixteen paragraphs. The above-quoted language from Rule 590–4–5–.01 simply provides one such non-exclusive avenue for exemption: offerings complying with Regulation D are exempt from filing if they also comply with subsection (16) and the "conditions and limitations" of Rule 590–4–5–.01. The language does not prohibit issuers who comply with Regulation D from obtaining exemptions under any other paragraph of O.C.G.A. § 10–5–9 and there is no reason why the court should read it to do so.

Defendants correctly argue that they exempted their offering under the Georgia Private Offering Exemption, codified at O.C.G.A. § 10–5–9(13). As required by subparagraph (A) of paragraph (13), fewer than fifteen persons in Georgia purchased investment units in Mineral Investors. O.C.G.A. § 10–5–9(13)(A); Affidavit of James F. DeLay at ¶ 5. As required by subparagraph (B), defendants did not offer to sell the units in Mineral Investors by any general or public solicitations or advertisements. O.C.G.A. § 10–5–9(13)(B); DeLay Aff. at ¶ 6. As required by subparagraph (C), the certificates representing the Georgia purchasers' ownership of units in Mineral Investors, as well as the Mineral Investors limited partnership agreement, contained legends stating that the securities were sold in reliance on O.C.G.A. § 10–5–9(13) and could not be sold or transferred except in a similarly exempt transaction or pursuant to effective registration.

O.C.G.A. § 10–5–9(13)(C). Finally, as required by subparagraph (D), each purchaser in Georgia executed a statement to the effect that he purchased his units in Mineral Investors for his own use and then held those units for more than one year. O.C.G.A. § 10–5–9(13)(D); DeLay Aff. at ¶¶ 9–10.

Plaintiffs seem to argue that defendants failed to satisfy the requirements of O.C.G.A. § 10–5–9(13) because they did not issue to plaintiffs copies of the certificates containing the legend prescribed by subparagraph (C). This argument is without merit. Contrary to plaintiffs' suggestion, no part of subparagraph (C) requires an issuer to deliver the certificates to their purchasers. *See* O.C.G.A. § 10–5–9(13)(C). Because defendants did not have to comply with O.C.G.A. § 10–5–9(16) and did in fact properly exempt their offering under O.C.G.A. § 10–5–9(13), the court DENIES plaintiffs' Motion for Partial Summary Judgment.

2. Defendant Thompson's Motion for Summary Judgment

As noted *supra*, plaintiffs assert that defendant Thompson is liable as a "controlling person" under a variety of state and federal statutes. Thompson moves for summary judgment on all of plaintiffs' claims on the ground that he is not a "controlling person" as a matter of law. Because the "controlling person" standard under Georgia law is essentially the same as that under Federal law, the court will examine Thompson's motion with regard to those statutes together. The court will then examine Thompson's motion with regard to plaintiffs' claim under the Florida Securities and Investor Protection Act.

A. Federal and Georgia Law

Section 20(a) of the 1934 Act states the "controlling person" theory of liability as follows:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the acts constituting the violation or cause of action.

15 U.S.C. § 78t(a). The "controlling person" liability provision of the 1933 Act, codified at 15 U.S.C. § 77o, contains slightly different language but is to be construed identically to that of the 1934 Act. *Pharo v. Smith*, 621 F.2d 656, 673 (5th Cir.1980).[1] The "controlling person" liability provision of the Georgia Securities Act is essentially similar to those of the 1933 and 1934 Acts. *See* O.C.G.A. § 10–5–14(c).[2] Federal law and Georgia law provide nearly identical definitions of a "controlling person:"

> The term "control" … means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise.

17 C.F.R. § 230.405(f); 17 C.F.R. § 240.12b–2(f); *see also* O.C.G.A. § 10–5–2(a)(5).

The plaintiff bears the burden of establishing that a given defendant is a "controlling person" under these provisions. *G.A. Thompson & Co. v. Partridge*, 636 F.2d 945, 958 (5th Cir.1981). Such defendant, however, may then assert the so-called "good faith" affirmative defense to "controlling person" liability. Under Sec-

---

1. Fifth Circuit cases decided before October, 1981 are binding on courts in this circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1210 (11th Cir.1981)

2. The Georgia Act's "controlling person" liability provision also includes "every general partner, executive offer, or director" of a "controlled person." O.C.G.A. § 10–5–14(c). Plaintiffs argument that Thompson was a "controlling person," however, rests on the more general aspect of the Georgia Act provision that covers "[e]very person who directly or indirectly controls" a liable person. The court thus need not examine whether Thompson was a "controlling person" based solely on his position as vice president of Gordian Securities.

tion 15 of the 1933 Act, a defendant may escape liability as a "controlling person" if he shows that he had "no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability of the controlled person is said to exist." 15 U.S.C. § 77o. The Georgia Act provides a nearly identical affirmative defense. *See* O.C.G.A. § 10–5–14(c) ("controlling person" must prove "that he did not know and in the exercise of reasonable care could not have known of the existence of the facts ..."). Finally, under Section 20(a) of the 1934 Act, a defendant may escape "controlling person" liability if he can establish that he "acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action." 15 U.S.C. § 78t(a). The *G.A. Thompson* court found that to avail himself of this defense under the 1934 Act, the controlling person must "establish that he did not act recklessly in inducing, either by his action or his inaction, the 'act or acts constituting the violation.'" 636 F.2d at 960.

■ Thus, the court begins its analysis by asking whether plaintiffs have shown that Thompson was a "controlling person." As Thompson correctly notes, his mere status as an officer of Gordian Securities does not make him a "controlling person." *See Herm v. Stafford*, 663 F.2d 669, 684 (6th Cir.1981). At the same time, however, he need not actually participate in the challenged transaction, as such a requirement would render meaningless the concept of secondary, "controlling person" liability. *See G.A. Thompson*, 636 F.2d at 958. Instead, the "controlling person" standard asks whether Thompson "had the requisite power to directly or indirectly control or influence corporate policy." *Id.* Thompson need not have exercised that power to be a "controlling person." *See San Francisco–Oakland Petroleum Exploration Co. v. Carstan Oil Co.*, 765 F.2d 962, 965 (10th Cir.1985).

The court agrees with plaintiffs that Thompson was a "controlling person." Thompson was vice-president of Gordian Securities. He also acted as president and held one-third of the outstanding shares of Gordian's apparent sister company, DeLay, Thompson & Beck (which also shared offices with Gordian). Thompson Dep. at 6–7, 16. Thompson was a full time employee of these companies and was fully capable of apprising himself of any of Gordian Securities' business dealings, including the Erwin transactions. *Id.* at 39–40. Given these facts, the court cannot find that Thompson maintained the great distance from the affairs of Gordian Securities that prevented other courts from finding certain directors to be "controlling persons." *See, e.g., Herm*, 663 F.2d at 684–85 ("record in this case is silent as to how [the alleged "controlling person"] exercised *any* control over the corporation. His position as a director, if anything, was only a misrepresentation....") (emphasis added); *cf. G.A. Thompson*, 636 F.2d at 958 (defendant who was a stockholder, officer and director "apparently involved in the day-to-day coordination of ... loan gathering" was "controlling person" as a matter of law).

■ The *more difficult question*, however, is whether Thompson has established a "good faith" affirmative defense. As stated above, Thompson can do this under the 1933 Act and the Georgia Act by showing that he had "no knowledge of or reasonable grounds to believe in the existence of the facts" underlying Gordian Securities' alleged liability. 15 U.S.C. § 77o; O.C.G.A. § 10–5–14(c). Under the 1934 Act, he must show that "he did not act recklessly in inducing, either by his action or inaction, the 'act or acts constituting the violation.'" *G.A. Thompson*, 636 F.2d at 960. The court finds that questions of material fact exist as to whether Thompson is entitled to these defenses and therefore must DENY his summary judgment motion on plaintiffs' federal and Georgia law claims.

It is true that Thompson may have lacked actual knowledge of the alleged illegalities committed in the name of Gordian Securities and appears to have done nothing directly to induce them. In Thompson's words, he "participated in none of the due diligence, none of the preparation of

the offering memorandum, none of the solicitation, and had no expertise to offer at the time to Gordian Investors." Thompson Dep. at 43.

Other facts, however, indicate that Thompson may have had reason to know of the alleged illegalities and thus may have acted recklessly in failing to attempt to prevent them. As noted above, Thompson, as vice president, was an active presence in the Gordian Securities office. He chose not to solicit investors for the transaction only because he did not think that it would interest any of his active clients. *Id.* at 30. Nevertheless, he was fully aware of the Erwin Minerals transaction and understood Erwin's basic capitalization needs and the type of investment that would occur. *Id.* at 26–27. Defendant DeLay and Gordian Securities' attorney, Steven Koegler, provided Thompson with a draft of "Proposal for Financial Advisory Services by Gordian Securities, Inc. to Erwin Minerals Corporation" and asked for his comments and suggestions. *Id.* at 29. Thompson also had "casual discussions" with attorney Koegler concerning the progress of the offering. *Id.* at 39. Finally, in his capacity as vice president, Thompson was fully capable of reviewing any document relating to the offering and otherwise learning of its details. *Id.* at 39–40. The court finds that these facts raise questions of material fact concerning Thompson's "good faith" defense to "controlling person" liability. *See G.A. Thompson,* 636 F.2d at 959 (affirming jury verdict against director on "good faith" defense issue under 1934 Act when director "could have exercised his power in the day-to-day administrative matters to minimize the chance of a 10b–5 violation" by another director).

### B. Florida Law

■ In Count IV of their Complaint, plaintiffs allege that all defendants, including Thompson, violated Fla.Stat. § 517.301(1)(a), known generally as Florida's "Little 10b–5." *See Research & Development Industries, Inc. v. Merril Lynch, Pierce, Fenner & Smith, Inc.,* No. 82–539, slip op. at 3 (M.D.Fla. Aug. 28, 1985) (unpublished). The Florida Securities

and Investors Protection Act, however, does not provide for secondary, "controlling person" liability. It imposes liability only on "[a]ny person purchasing or selling a security in violation of s. 517.301, and every director, officer, partner, or agent of or for the purchaser or seller, if the director, officer, partner, or agent has personally participated or aided in making the sale or purchase." Fla.Stat. § 517.211(2). Thus, in order to be liable under Fla.Stat. 517.301(1)(a), a director or officer must personally engage in some act or acts that induce a purchaser to invest. *Ruden v. Medalie,* 294 So.2d 403, 406 (Fla.Dist.Ct. App. 3 1974) (construing identical language of predecessor to Fla.Stat. § 517.211(2)). Because there is no evidence that Thompson personally induced plaintiffs to invest in Mineral Investors, the court GRANTS his summary judgment motion on plaintiffs' Florida law claim.

Having prevailed on plaintiffs' Florida law claim, Thompson is entitled to his reasonable attorneys' fees incurred in defending against it. Fla.Stat. § 517.211(6) provides that "[i]n any action brought under this section, ... the court shall award reasonable attorneys' fees to the prevailing party unless the court finds that the award of such fees would be unjust." In *Research & Development Industries,* the court awarded defendants' their attorneys' fees under this provision for successfully defending against plaintiff's Florida Securities and Investor Protection Act claim. No. 82–539, slip. op. at 6. The court stated that "all things being equal, there is nothing 'unjust' in awarding attorneys' fees to a defendant if the defendant is the 'prevailing party.'" *Id.*

Following this analysis, the court GRANTS Thompson's request for attorneys' fees incurred in connection with his successful defense against plaintiffs' Florida law claim. The court finds no circumstances in this case making such an award unjust. The court will, however, defer calculating these attorneys' fees until after the close of this litigation. Thompson may submit appropriate affidavits and documentation at that time.

## CONCLUSION

The court DENIES plaintiffs' Motion for Partial Summary Judgment. The court DENIES IN PART and GRANTS IN PART defendant Thompson's Motion for Summary Judgment and for Award of Attorneys' Fees. The court GRANTS both Defendants' and Plaintiffs' Motion[s] for Leave to Supplement the Record.

So ORDERED.