**M. Gibson DURDEN, individually and as Trustee for the M. Gibson Durden Charitable Remainder Unit Trust, Plaintiff,**

v.

**CITICORP TRUST BANK, FSB, Defendant.**

**Case No. 3:07–cv–974–J–34JRK.**

United States District Court, M.D. Florida, Jacksonville Division.

Jan. 20, 2011.

Steven J. Gard, Gard Law Firm, Ponte Vedra Beach, FL, for Plaintiff.

Michael A. Abel, Andrew Joshua Steif, Holland & Knight, LLP, Jacksonville, FL, for Defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

MARCIA MORALES HOWARD, District Judge.

**THIS CAUSE** is before the Court on Citicorp Trust Bank, FSB's Renewed Motion for Attorneys' Fees and Supporting Memorandum of Law (Doc. No. 134; Motion), filed on June 17, 2010.[1] Having reviewed the pleadings and considered the arguments of counsel as well as the remainder of the record, the Court makes the following findings of fact and conclusions of law as required by Rules 54(d)(2)(C) and 52(a), Federal Rules of Civil Procedure (Rule(s)).

### I. Findings of Fact

Plaintiff initiated the instant action by filing a multi-count complaint against Defendant in Florida state court. Defendant removed the action to this Court and filed a Motion to Dismiss. *See* Notice of Removal (Doc. No. 1); Defendant Citicorp Trust Bank's Motion to Dismiss and Supporting Memorandum of Law (Doc. No. 6; Motion to Dismiss). On May 16, 2008, 2008 WL 2098040, the Honorable Virginia M. Hernandez Covington, the district judge previously assigned to the case, entered an Order granting, in part, and denying, in part, the Motion to Dismiss. *See*

Order (Doc. No. 22).[2] In accordance with Judge Covington's Order, on June 6, 2008, Plaintiff filed his First Amended Complaint (Doc. No. 26; Complaint), which became the operative Complaint in this action.

In the Complaint, Plaintiff alleged several claims against Defendant in connection with Defendant's management of certain trust assets. Specifically, Plaintiff alleged violations of the Florida Securities and Investor Protection Act (FSIPA), Florida Statutes section 517.301(1)(a) (count one); breach of fiduciary duty and breach of trust (count two); negligence (count three); negligent misrepresentation (count four); and fraud in the inducement and unjust enrichment (count five). *See generally* Complaint. After Plaintiff filed the Complaint, the case was transferred to the undersigned.

Defendant filed a Motion for Summary Judgment on April 1, 2009. *See* Motion for Summary Judgment of Defendant Citicorp Trust Bank, FSB and Memorandum of Legal Authority (Doc. No. 40; Motion for Summary Judgment). On August 21, 2009, 2009 WL 6499365, the Court entered an Order granting, in part, and denying, in part, Defendant's Motion for Summary Judgment. Specifically, the Court granted summary judgment in favor of Defendant as to Plaintiff's claims for violation of FSIPA (count one), negligent misrepresentation (count four), and fraud in the inducement and unjust enrichment (count five), and the Court denied summary judgment

---

1. Defendant previously filed a motion for attorney's fees in which it requested that the Court bifurcate its analysis and decide the issue of Defendant's entitlement to a fee award before considering the amount of any such award. *See* Citicorp Trust Bank, FSB's Motion for Attorneys' Fees and Supporting Memorandum of Law (Doc. No. 118). The Court denied the initial motion without prejudice, finding it "more appropriate to consider the issues pertaining to the entitlement to and

amount of an award of attorney's fees *in toto* rather than to bifurcate the issues." Order (Doc. No. 131) at 4.

2. Judge Covington dismissed without prejudice Plaintiff's claims for fraud, negligent misrepresentation, and fraudulent inducement, for failure to plead with particularity as required by Rule 9(b), Federal Rules of Civil Procedure. *See id.* at 11–16.

as to the remaining claims. *See* Order (Doc. No. 70; Summary Judgment Order) at 34–35. Plaintiff later voluntarily dismissed his negligence claim (count three) with prejudice, *see* Dismissal With Prejudice (Doc. No. 96), and his sole remaining claim—breach of fiduciary duty and breach of trust (count two)—proceeded to jury trial. On December 10, 2009, the jury returned a verdict in favor of Defendant. *See* Verdict (Doc. No. 115). Thereafter, in accordance with the jury's verdict and the Court's Summary Judgment Order, the Court entered Judgment in favor of Defendant and against Plaintiff as to counts one, two, four, and five of Plaintiff's Complaint. *See* Judgment in a Civil Case (Doc. No. 117).

In the instant Motion, Defendant requests "an award of the attorneys' fees incurred in defending Plaintiff's [FSIPA] claim and related fraud claims in the amount of" $85,350.25. *See* Motion at 1, 14, 16. Defendant contends that a fee award for defense of the FSIPA claim is appropriate under Florida Statutes section 517.211(6), and that a fee award is likewise appropriate for the related fraud-based claims—negligent misrepresentation and fraud in the inducement—because those claims were "intertwined" with the FSIPA claim. *See* Motion at 7–13. Defendant limits its fee request to defense of the fraud claims, and does not seek fees associated with the remaining claims. *See id.* at 2 n. 2. Plaintiff opposes the requested relief. *See generally* Plaintiff's Response to Defendant's Renewed Motion for Attorney's Fees (Doc. No. 136; Response). Specifically, Plaintiff argues that an award of fees would be "unjust" and, alternatively, that even if an award of fees is proper as to the FSIPA claim, the other fraud claims are not sufficiently intertwined with that claim to justify a fee award for any efforts directed toward those claims. *See id.* at 1–13. Finally, Plaintiff argues that Defendant's fee request is excessive. *See*

*id.* at 13–16. The issues in the Motion are fully briefed and ripe for resolution.

## II. Conclusions of Law

### A. Propriety of Fee Award for Defense of FSIPA Claim

#### 1. Applicable Law

■ Because Defendant's "claim for attorneys' fees sounds in state law and reaches [this Court] by way of federal diversity jurisdiction, [the Court applies] the substantive law of Florida, the forum state" including its choice of law provisions. *Trans Coastal Roofing Co., Inc. v. David Boland Inc.*, 309 F.3d 758, 760 (11th Cir.2002) (citation omitted); *see also Prime Ins. Syndicate, Inc. v. B.J. Handley Trucking, Inc.*, 363 F.3d 1089, 1091 (11th Cir.2004) (citation omitted). Plaintiff seeks a fee award under Florida Statutes section 517.211(6), and thus, Florida state law governs whether a fee award is appropriate. *See Golub v. J.W. Gant & Assocs.*, 863 F.2d 1516, 1521 (11th Cir.1989); *Dillon v. Axxsys Int'l, Inc.*, No. 8:98–cv–2237–T–23TGW, 2006 WL 3841809, at *2 (M.D.Fla. Dec. 19, 2006); *see also Prime Ins. Syndicate, Inc. v. Soil Tech Distribs., Inc.*, 270 Fed.Appx. 962, 963 (11th Cir. 2008) (per curiam) ("We have consistently recognized that in diversity cases a party's right to attorney's fees is determined by reference to state law.") (citing *All Underwriters v. Weisberg*, 222 F.3d 1309, 1311 (11th Cir.2000)).

■ "Under Florida law, each party generally bears its own attorneys' fees unless a contract or statute provides otherwise." *United States v. Pepper's Steel & Alloys, Inc.*, 289 F.3d 741, 742 (11th Cir. 2002) (per curiam) (citation omitted); *see also Dade County v. Pena*, 664 So.2d 959, 960 (Fla.1995). Plaintiff brought his FSIPA claim pursuant to Florida Statutes sections 517.301(1)(a) and 517.211(2). *See* Complaint at 5–7; *see also E.F. Hutton &*

Co., Inc. v. Rousseff, 537 So.2d 978, 980–81 (Fla.1989) (per curiam) (explaining that section 517.211(2) provides the civil liability provision for violations of section 517.301(1)). Section 517.211(6) provides that "[i]n any action brought under this section, including an appeal, the court shall award reasonable attorneys' fees to the prevailing party unless the court finds that the award of such fees would be unjust." Thus, there being no dispute that Defendant is the prevailing party as to Plaintiff's FSIPA claim, Defendant is entitled to an award of attorney's fees as to that claim unless such an award would be unjust. See id.; see also Golub, 863 F.2d at 1521 ("The award of attorneys' fees [under section 517.211(6) ] is compelled by the statute unless the result would be unjust."); Josephthal Lyon & Ross, Inc. v. Durham, 734 So.2d 487, 489 (Fla. 5th DCA 1999) ("Success on the FSIPA claim would entitle Durham to an award of attorney's fees [under section 517.211(6) ]." (internal citation omitted).[3]

## 2. Analysis

Plaintiff argues that an award of attorney's fees in this case would be unjust. In support of this position, he contends that there is a "vast difference in financial resources between" the parties; that Plaintiffs resources "were already depleted" and Defendant "profited" during the period Defendant served as trustee; that Plaintiffs "claims had merit and were not frivolous"; that Plaintiff's "losses were real and were caused by the Defendant's investment decisions"; and that a fee award "would be contrary to the remedial nature and purpose of the Florida Securities Act and would serve as a deterrent to future plaintiffs with similar claims." See Response at 7–8.

The fundamental flaw in Plaintiffs argument is that he conflates the breach of fiduciary claim—which, although it failed before the jury, survived summary judgment and a motion for directed verdict—with the FSIPA and other fraud claims—which were resolved by summary judgment in favor of Defendant. Although Plaintiff focuses on the relative merit of the former, it is only the latter for which Defendant seeks a fee award. Contrary to Plaintiffs representation, his fraud claims, including his FSIPA claim, were neither justified nor meritorious. Indeed, the Court recognized that "fraud claims do not usually lend themselves to summary disposition" but nevertheless, after extensive review of the record, determined that Plaintiffs allegations of fraud were so unsubstantiated "that under each theory of fraud advanced by Plaintiff he has failed to identify a genuine dispute of material fact that would enable a reasonable jury to return a verdict in his favor." See Sum-

---

**3.** Under the plain language of section 517.211(6), fees are not restricted to prevailing plaintiffs, but rather, are available to the prevailing "party"—whether plaintiff or defendant. See Fla. Stat. § 517.211(6); Ivans v. McKid Ltd., 642 So.2d 798, 799 (Fla. 3d DCA 1994) (per curiam) (affirming award of attorneys' fees under section 517.211(6) in favor of prevailing defendant and against the plaintiff); Pirretti v. Dean Witter Reynolds, Inc., 578 So.2d 474, 475 (Fla. 4th DCA 1991) ("We affirm a judgment for attorney's fees in favor of the prevailing defendants awarded in an action alleging the unlawful sale of securities under section 517.211(6), Florida Statutes.");

see also Schultz v. Hembree, 975 F.2d 572, 575 (9th Cir.1992) ("Under the Florida blue sky statute, 'the court shall award reasonable attorneys' fees to the prevailing party unless the court finds that the award of such fees would be unjust.' The defendants were the prevailing parties. The Florida statute has been interpreted by the Florida courts to allow defendants to recover attorneys' fees to the same extent as plaintiffs. The district court properly construed the statutory language as requiring an award of fees in this case.") (internal quotation and citations omitted). Plaintiff freely acknowledges as much. See Response at 2.

mary Judgment Order at 12, 26.[4] For this reason, the various cases cited by Plaintiff in support of his contention that a fee award would be unjust are readily distinguishable. *See Dillon*, 2006 WL 3841809, at **9–11 (holding that a fee award would be unjust where defendant won as to FSIPA claim but plaintiffs won as to another closely related claim, noting that "[s]uch an award would completely negate" plaintiffs recovery as to the claim for which they prevailed and "would result in the defrauded plaintiffs owing a beneficiary of the fraud over $100,000"); *Newsom v. Dean Witter Reynolds, Inc.*, 558 So.2d 1076, 1077–78 (Fla. 1st DCA 1990) (finding fee award against plaintiff would be unjust where plaintiff's claims had merit but defendant was ultimately able to escape liability on technical defenses, explaining that although defendant "was able to escape liability by virtue of its legal defenses, [defendant] nonetheless committed statutory fraud, and it would be unjust under the circumstances to require [plaintiff] to pay for its technical escape"); *Raymond James & Assocs., Inc. v. Golin*, Case No. 94–01599, attached as Exhibit B to Doc. No. 124, at 2 (Fla. 13th Cir.Ct.1995) (holding fee award against defendants would be unjust where their position "was substantially justified and had merit"); *Taylor v. E.F. Hutton & Co., Inc.*, 40 Fla. Supp.2d 144, 149 (Fla. 12th Cir.Ct.1990) ("[T]he claims of Plaintiff in this case, although ultimately unsuccessful, were substantially justified and had substantial merit ... [T]he court viewed the evidence as extremely close and viewed this as a case which could have as easily been won by Plaintiff as Defendants.").[5] Plaintiff has not cited, nor has the Court discovered,

---

4. Not only were the fraud claims without merit, but the cost of defense was at least partially aggravated by the fact that Plaintiff attempted to inject life into the claims with a last-minute affidavit, which the Court concluded must be disregarded due to its inherent inconsistency with his prior deposition testimony. *See id.* at 19–20 ("The Court recognizes, and does not take lightly, the heavy burden a party must carry in order to have the Court set aside a sworn affidavit as a sham. On the record in the instant case, however, the Court concludes that Plaintiff's affidavit is so inherently inconsistent with his prior deposition testimony as to warrant such action.").

5. In *Taylor*, the Court considered three factors in determining whether a fee award would be unjust: "the relative economic strengths of the parties"; "the public policies, if any, behind the statute authorizing attorneys' fees in this case"; and "whether or not the claims made by the non-prevailing Plaintiff in this action were substantially justified." *See id.* at 148.

In *Taylor*, the court found the second factor, policy, to weigh against an award of fees because the purpose of the statutory scheme underlying the Florida Blue Sky Law "is to encourage private citizens to bring *appropri-*

*ate* legal actions under the statute...." *Id.* at 149 (emphasis added). It is apparent that, although analyzed separately, the relative merit and justification of the plaintiff's claims also factored into the policy consideration. *See id.* (finding frequent substantial fee awards "against private citizen plaintiffs would have a deterrent and chilling effect upon others who might otherwise" bring claims and finding that a fee award would not further the policies behind the statutory scheme because "this deterrent and chilling effect would particularly take place were courts to frequently award fees to prevailing securities industry defendants *even in those cases where the claims of the plaintiffs, although unsuccessful, had substantial merit or were substantially justified* ") (emphasis added). Put differently, the policy implications behind a private citizen suit are derivative of the suit's justification—public policy supports private citizen suits of meritorious claims that ultimately fail, but no public policy is vindicated when a private citizen brings a suit without merit or justification.

Thus, unlike in *Taylor*, in this case, although the first factor may weigh in favor of a determination that a fee award would be unjust, the final two factors weigh heavily in the opposite direction.

any decision holding a fee award against a non-prevailing plaintiff to be unjust where the plaintiff's FSIPA claim was without merit or justification.[6] Under these circumstances, the Court cannot find that a fee award against Plaintiff for defense against his FSIPA claim would be unjust. *See Binder v. Gordian Secs., Inc.*, 742 F.Supp. 663, 669 (N.D.Ga.1990) ("Having prevailed on plaintiffs' Florida law claim [under FSIPA], [the defendant] is entitled to his reasonable attorneys' fees incurred in defending against it.... [A]ll things being equal, there is nothing 'unjust' in awarding attorneys' fees to a defendant if the defendant is the 'prevailing party.'") (quotation and internal quotation marks omitted).

## B. Scope of Award

### 1. Applicable Law

Having determined that Defendant is entitled to a fee award as to the FSIPA claim, the Court next considers the amount to be awarded, which presents a distinct question. Defendant acknowledges no entitlement as to fees for Plaintiffs non-fraud-based claims; however, in addition to fees incurred in defending against the FSIPA claim, Defendant seeks fees for its defense against Plaintiff's other fraud-based claims—negligent misrepresentation and fraud in the inducement—arguing that

those claims were "intertwined" with the FSIPA claim. *See* Motion at 9–12.

 In contrast to the FSIPA claim, the remaining fraud-based claims have no independent statutory authority for a fee award. Where, as here, "a party is entitled to an award of fees for only some of the claims involved in the litigation, i.e., because a statute or contract authorizes fees for a particular claim but not others, the trial court must evaluate the relationship between the claims" to determine the scope of the fee award. *Chodorow v. Moore*, 947 So.2d 577, 579 (Fla. 4th DCA 2007). If "the claims involve a 'common core' of facts and are based on 'related legal theories,' a full fee may be awarded *unless it can be shown that the attorneys spent a separate and distinct amount of time on* counts *as to which no attorney's fees were sought · [or were authorized ].*" *Id.* (quotation and internal quotation marks omitted) (alteration in *Chodorow*). Thus, for example, where a particular claim is subject to a fee entitlement but one or more related claims are not, "time spent marshaling the facts" of the related claims is compensable because it "likely would have been spent defending any one or all of the counts." *See Caplan v. 1616 E. Sunrise Motors, Inc.*, 522 So.2d 920, 922 (Fla. 3d DCA 1988). In contrast, time spent researching a "discrete issue" as to a

---

**6.** Plaintiff acknowledges that prevailing defendants may recover fees under FSIPA, but nevertheless argues that this is poor policy because it "adds to the burden already suffered as a result of the investor's investment losses[.]" *See* Response at 2. To that end, Plaintiff represents that although the Florida statute is "based upon the Model Uniform Securities Act, the attorneys fee provision represents a substantial departure from the Model Act." *See id.* Specifically, Plaintiff represents that under "the Model Act, only successful *plaintiffs* who bring claims under the Act may recover attorneys fees" and that "[f]ew states besides Florida have made this modification." *See id.*

The Court has not independently verified Plaintiff's representation. Assuming it has merit, his argument is better presented to the Florida legislature than to this Court. Certainly, the Court may, in appropriate circumstances, consider the policy behind the Florida statutory scheme that encourages enforcement through private suit. *See Newsom*, 558 So.2d at 1077–78; *Taylor*, 40 Fla. Supp.2d at 149. But where the Florida legislature has chosen to make fees available to a prevailing defendant, the Court is not free to simply reject this decision in favor of its own policy judgment.

claim without a fee entitlement should not be included in a fee award. *See id.* The party seeking an award of fees " 'has the burden to allocate them to the issues for which fees are awardable or to show that the issues were so intertwined that allocation is not feasible.' " *Chodorow,* 947 So.2d at 579; *see also Pirretti v. Dean Witter Reynolds, Inc.,* 578 So.2d 474, 475–76 (Fla. 4th DCA 1991) (affirming fee award under section 517.211(6) "for all work performed although some of the . . . claims involved issues for which fees are not otherwise recoverable" because "the effort required to defend the case was the same as to both the [claim with the fee-shifting provision and the other claims] and . . . a time allocable to each could not reasonably be separately determined") (citations omitted).

## 2. Analysis

■ It appears to the Court that the non-FSIPA fraud claims and the FSIPA claim in this case involved a "common core" of facts and "related" legal theories. *See Chodorow,* 947 So.2d at 579; *Caplan,* 522 So.2d at 922; *see also* Summary Judgment Order at 10–26 (analyzing and discussing fraud claims jointly); Complaint at 5–7, 10–12 (relying on common factual

predicate for all fraud claims).[7] Nevertheless, it is also apparent that although the services performed and fees rendered were often intertwined, Defense counsel also *"spent a separate and distinct amount of time"* in some respects on the non-FSIPA fraud claims. *See Chodorow,* 947 So.2d at 579 (quotation and internal quotation marks omitted); *Caplan,* 522 So.2d at 922; *compare e.g.,* Motion for Summary Judgment at 18–19, 21–22 (advancing common argument as to insufficiency of all fraud claims) *with id.* at 20 (discussing independently elements for cause of action under theories of negligent misrepresentation and fraud in the inducement); *see generally* Motion to Dismiss (presenting distinct legal arguments for dismissal of FSIPA and non-FSIPA fraud claims) *see also* Order (Doc. No. 22) at 16–17 (dismissing claims for fraud, negligent misrepresentation, and fraud in the inducement, but not for FSIPA, for failure to plead with particularity as required by Rule 9(b)).[8] In sum, Defendant's position is over-inclusive, and Plaintiffs position is under-inclusive—Defendant is not precluded from seeking any fees pertaining to the interrelated non-FSIPA fraud claims, but ought not recover in entirety for all defense of those claims.[9]

---

7. As the Court previously noted, the "shotgun" nature of Plaintiff's Complaint made it difficult to determine which allegations pertained to which claims. *See* Summary Judgment Order at 2 n. 3. Nevertheless, in the briefing on the Motion for Summary Judgment, the parties argued all fraud claims based on a common factual predicate. *See* Summary Judgment Order at 10, 13–14. The Court similarly considered, and ultimately decided, the summary judgment issues as to all fraud claims on a common factual predicate. *See id.* at 10–26.

8. The Court does not suggest that Rule 9(b) is inapplicable to FSIPA. *See Slayter v. DC 701, LLC,* No. 8–07–cv–1903–T–24–EAJ, 2008 WL 2695645, at *4 (M.D.Fla. July 3, 2008) ("Because § 517.301 involves fraud, Plaintiffs

must allege the elements of the claim with particularity, as required by Rule 9(b). . . ."). Nevertheless, it appears to the Court that Defendant chose not to pursue a Rule 9(b) argument as to the FSIPA claim, but rather to confine its Rule 9(b) argument to the other claims of fraud and to seek dismissal of the FSIPA claim on different grounds.

9. For example, Defendant seeks recovery for the following time on November 23, 2008: "continue to prepare summary judgment motion and brief with extensive attention to preparation of statement of facts with citations to the record." *See* Time Record, attached as Exhibit A to Declaration of Michael A. Abel, Esq. in Support of Renewed Motion for Attorney's Fees, attached as Exhibit A to Motion, at 23. Such work is recoverable both

## C. Reasonable Award

 Having determined that Defendant is entitled to a fee award, and that the scope of that award should encompass defense of the FSIPA claim and, to the extent interrelated, the non-FSIPA fraud claims, the Court must next address the reasonable amount of such an award. As with the propriety of a fee award, the reasonable amount of such an award is governed in this case by Florida law; which, in turn, utilizes "the lodestar [10] approach as developed by federal case law." *Resolution Trust Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1148 (11th Cir.1993) (per curiam); *see also Newman v. Ormond*, 396 Fed.Appx. 636, 640 (11th Cir.2010) (per curiam) ("Florida has adopted the federal lodestar approach to calculating reasonable attorney's fees.").

The first step to determine a fee award utilizing the lodestar approach is to calculate the lodestar figure, that is, " 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.' " *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir.2008) (per curiam); *see also Eckhardt v. 424 Hintze Mgmt., LLC*, 969 So.2d 1219, 1222 (Fla. 1st DCA 2007).

## 1. Reasonable Hourly Rate

 Taking the lodestar calculus in reverse order, the Court first addresses counsel's hourly rates. A reasonable hourly rate "is the 'prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation.' " *Dillard v. City of Greensboro*, 213 F.3d 1347, 1354 (11th Cir.2000) (per curiam) (quotation omitted). Defendant's seek an hourly rate of $385 per hour by attorney Abel, and $195 per hour by attorney Steif. *See* Declaration of Michael A. Abel, Esq. in Support of Renewed Motion for Attorney's Fees (Abel Declaration), attached as Exhibit A to Motion, at 9. These rates are supported by affidavits of Abel and an independent lawyer in the Jacksonville area, as well as the fact that Defendant itself agreed to pay its attorneys based upon these hourly rates. *See* Abel Declaration at 8–9; Declaration of Michael G. Tanner as to Reasonableness of Attorney's Fees Incurred by Defendant, Citicorp Bank, FSB, attached as Exhibit B to Motion; *see also Dillard*, 213 F.3d at 1354–55. Plaintiff classifies these rates as "at the 'upper end' " of the relevant market, but does not specifically challenge the rates, or propose alternative rates. Having consid-

---

in its relation to the FSIPA claim and the intertwined non-FSIPA fraud claims. In contrast, Defendant seeks recovery for the following time on October 16, 2007: "Legal research regarding pleading with particularity, failure to attach documents and economic loss rule for use in motion to dismiss." *See id.* at 3. Notwithstanding that such work may have advanced defense of the non-FSIPA fraud claims, because it is separate and distinct from the FSIPA defense, it is not recoverable. *See generally* Motion to Dismiss (presenting distinct legal arguments for dismissal of FSIPA and non-FSIPA fraud claims); Order (Doc. No. 22) at 16–17 (dismissing claims for fraud, negligent misrepresentation, and fraud in the inducement, but not for FSIPA, for failure to plead with particularity as required by Rule 9(b)); *see also New Lenox*

*Indus., Inc. v. Fenton*, 510 F.Supp.2d 893, 909 (M.D.Fla.2007) ("Florida courts have consistently held that statutory causes of action are not limited by the economic loss rule."); *Invo Fla., Inc. v. Somerset Venturer, Inc.*, 751 So.2d 1263, 1267 (Fla.3d DCA 2000) (per curiam) (explaining economic loss rule does not bar statutory causes of action). These examples are representative, and not exhaustive.

**10.** The lodestar method provides an objective estimate, or "lodestar," of a reasonable attorney's fee award. *See Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir.1988). The lodestar method calculates a reasonable attorney's fee award by multiplying the reasonable hourly rate by the reasonable number of hours expended, resulting in the lodestar figure. *See id.*

ered the affidavits proffered by Defendant, and the Court's own knowledge and experience, the Court finds the proffered rates to be reasonable.

## 2. Reasonable Number of Hours

### a. Applicable Law

 As explained above, Defendant is entitled to a fee award only with respect to defense of the FSIPA claim, and, to the extent interrelated, the non-FSIPA fraud claims; Defendant is not entitled to, and does not seek, an award for defense of the non-fraud claims. In a case such as this, "where part of the attorney's efforts are to go uncompensated, the burden is on the attorney to provide sufficient evidence for the court to make a correct division." *Loranger v. Stierheim*, 10 F.3d 776, 782 (11th Cir.1994) (quotation and internal quotation marks omitted). If "a request for attorney's fees does not permit easy division between compensable and non-compensable hours, a district court should require the party seeking fees to refashion its request." *Id.* (citation omitted). Nevertheless, " '[a]lthough the party seeking fees has the burden of supplying the court with detailed evidence from which the court can determine a reasonable fee, where that party presents inadequate documentation the court may determine a reasonable award based on its own experience.' " *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1311 (11th Cir.2001) (quoting *Mills ex rel. Mills v. Freeman*, 118 F.3d 727, 734 (11th Cir.1997), *superceded by Rule on other grounds as stated in Gray ex rel. Alexander v. Bostic*, 613 F.3d 1035, 1043 n. 3 (11th Cir.2010)); *see also Am. Civil Liberties Union of Ga. v.*

*Barnes*, 168 F.3d 423, 431–32 (11th Cir. 1999). Faced with a voluminous billing record, a district court "has two choices" if it "finds the number of hours claimed is unreasonably high": the court "may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Bivins*, 548 F.3d at 1350.

### b. Analysis

Defendant requests compensation in this case for 311.1 attorney hours, divided amongst one partner and one associate. In support, Defendant proffers billing records and representations from lead defense counsel to the following effect: the billing records are accurate descriptions of the tasks performed and have been reduced in accordance with billing judgment to write-off time counsel deemed excessive or duplicative, *see* Abel Declaration at 7, 9; billing pertaining exclusively to non-fraud claims has been extracted, *see id.* at 5; and the remaining billing pertains in part to compensable time, and in part to non-compensable time, but counsel's records do not enable precise delineation, *see id.* at 6–7. In light of the inability to precisely delineate the time that is block-billed, or otherwise pertains to both compensable and non-compensable work, Defense counsel has proposed a 50% reduction—with limited exception—of this remaining time. *See id.* at 7. In sum, after reduction for billing judgment and extraction of all clearly non-compensable time, Defense counsel has identified the remaining hours of billing that pertains in part to compensable work, and in part to non-compensable work[11]; counsel has reduced these hours by approximately 50%, and seeks compensation for the remaining 311.1 hours.[12]

---

**11.** Defendant's requested recovery for billing pertaining to fees for fees has not been halved, and limited other entries are reduced at a different rate; thus the overall reduction appears to the Court to be slightly less than 50%.

**12.** It is not readily apparent how many of these hours were performed by the partner, Michael Abel, and how many by the associate, Andrew Steif. Based on Defendant's proffered hourly rates, however, it appears that the hours are comprised of approximately 129

■ The billing records submitted by Defendant in this case are voluminous, but, as discussed above, they do "not permit easy division between compensable and non-compensable hours"; nevertheless, requiring Defendant "to refashion its request[,]" *see Loranger*, 10 F.3d at 782, would be an exercise in futility because counsel has indicated to the Court that the billing records cannot be further compartmentalized. *See* Abel Declaration at 6–7. "Notwithstanding these difficulties, a district court faced with an inadequate fee application must still award a reasonable

fee." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1196 (11th Cir.2002) (citation omitted); *see also Villano*, 254 F.3d at 1311; *Barnes*, 168 F.3d at 432.

Although Defendant's imprecise billing records and Plaintiff's imprecise objections [13] make it difficult to assess a reasonable number of hours in this case, it appears to the Court that Defendant's proffer is over-inclusive. Preliminarily, it appears to the Court that the total base number of hours included by Defendant is unreasonable in two respects—it is both duplicative [14] and excessive.[15] Moreover,

hours by Abel, and 183 hours by Steif. Although these figures add up to a total of 312, correction for the inclusion of a higher hourly rate for one month reduces the figure to 311.1. *See* FN 18 *infra*.

13. With one exception, Plaintiff has not cited or argued to the Court any specific objections. Rather, Plaintiff has simply "asserted, in the most general manner, that defense counsel took too many hours getting the case dismissed." *See Oxford*, 297 F.3d at 1197. Although *specific* objections to a fee application require detailed and specific findings in support of a Court's fee decision, "a boilerplate objection" like Plaintiff's may, in turn, merit "a boilerplate response[.]" *See id.; see also Barnes*, 168 F.3d at 428–29 ("The more specific the objections to a fee application are, the more specific the findings and reasons for rejecting those objections can be."). Nevertheless, for the reasons explained below, the Court finds the fees sought excessive.

The only specific objection Plaintiff lodges to Defendant's fee request mostly lacks merit. Plaintiff argues that "[t]ime spent litigating the *amount* of fees as opposed to a party's *entitlement* of fees is not awardable" and that "[a]ccordingly, even the time charged by Defendant's counsel in seeking attorneys fees is not recoverable since its efforts were devoted mainly to increasing the amount of its fees rather than establishing the right to recover them." *See* Response at 15–16. Plaintiff correctly states the law, *see McMahan v. Toto*, 311 F.3d 1077, 1085–86 (11th Cir.2002), but errs in its application of the law to this case. As previously discussed, Defendant initially sought a bifurcated analysis from the Court which would have addressed entitlement to fees before addressing the amount thereof.

Nearly all of the "fees for fees" sought by Defendant pertain to this initial briefing (which has largely been recast before the Court in the instant briefing). Indeed, all of the "fees for fees" time sought prior to April 27, 2010, 2010 WL 2105924, when the Court denied the initial fee request without prejudice, pertained exclusively to the entitlement, and not amount, of any fee award. Since that time, Defendant has only billed 3.2 hours in this case, and seeks reimbursement for only 1.4 hours. The Court takes note that a percentage of this 1.4 hours may be improper, and will take the same into account in crafting the ultimate fee award. (Because, as explained below, the Court is inclined to reduce Defendant's fee with an across-the-board cut, it is improper to also reduce Defendant's fee with an hour-by-hour analysis for reasonableness. *See Bivins*, 548 F.3d at 1351.). In sum, the Court has considered Plaintiffs single specific objection, finds it to be mostly, but not entirely, without merit, and will take it into consideration when crafting the ultimate fee award.

14. Because " '[t]here is nothing inherently unreasonable about a client having multiple attorneys ..., a reduction for redundant hours 'is warranted only if the attorneys are unreasonably doing the same work.' An award for time spent by two or more attorneys is proper as long as it reflects the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation.' " *Barnes*, 168 F.3d at 432 (quotation omitted) (alteration in *Barnes* ). Accordingly, a fee applicant bears the "burden of showing that the time spent by those attorneys reflects the distinct contribution of each lawyer to the case

it appears to the Court that some of the time that has not been extracted from Defendant's billing charts is actually non-compensable work unrelated to the FSIPA defense,[16] and that Defendant over-represents the extent to which the FSIPA and the other fraud claims were interrelated.[17] In other words, it appears that Defendant may have started with an unreasonably high base number of hours, and reduced that base by a percentage less than necessary to ensure recovery for only compensable work.[18]

Thus, the Court elects to reduce the voluminous billing request "with an across-the-board cut." *See Bivins*, 548 F.3d at 1350.[19] First, to account for the duplicative and excessive billing, the Court will reduce the base number and hours, and corresponding billing of approximately $170,700.50[20] by 20%. This leaves a corresponding base figure of $136,560.40. Next, to account for the fact that significant portions of this base figure appear to be non-compensable and that Defendant has over-represented the extent the FSIPA defense was intertwined with the other fraud claims, the Court will eschew Defendant's discount of the base figure by approximately 50% in favor of a discount of 55%. This leaves a total recovery of $61,452.18, a figure the Court believes reasonable under the circumstances.

and is the customary practice of multiple-lawyer litigation."

Here, although it was not unreasonable for Abel, a partner, and Steif, an associate, to work on the case, it appears that they have unnecessarily "double-billed" for much work that does not reflect their distinct contributions to the case. As representative examples, both Abel and Steif separately billed for: reviewing court orders, attending mediation, and preparing for and attending Plaintiff's deposition. Indeed, between the two, they billed more than 37 hours preparing for and attending Plaintiffs deposition.

15. As indicated by the fact that defense counsel billed approximately $160,000 through only the summary judgment stage of a case with an amount of controversy of approximately $250,000, it appears that some of Defendant's billing is excessive. For example: having already worked extensively on its motion for summary judgment counsel billed more than 6 hours crafting a mediation statement; more than three hours drafting correspondence to opposing counsel concerning refusal to agree to extension of the discovery cut-off date; and, as previously mentioned, more than 37 hours preparing for and attending Plaintiff's deposition.

16. For example, although these tasks did not pertain to defense of the FSIPA claim in any respect, they all remain un-redacted in Defendant's proffered billing records: research concerning economic loss rule; motion in limine to exclude Plaintiff's expert witness; correspondence concerning expert witness fees; research pertaining to statute of limitations for breach of fiduciary duty claims; research pertaining to fiduciary duty and negligence claims.

17. *See supra* Part II.B.2.

18. The Court notes that although, as discussed above, Defendant purports to seek expenses only at the reduced billing rate of $385 per hour for Abel and $195 per hour for Steif, it appears that for hours in October 2008, Defendant has calculated recovery based on higher hourly rates. The Court takes this mathematical error into account in crafting its overall fee reduction.

19. This reduction ultimately alleviates any concern by Plaintiff that the fees sought are disproportionately high given the amount at stake in this case. *See* Response at 14.

20. Without an hour-by-hour-assessment, the imprecise nature of the proffered billing records make it difficult to discern the exact base billing figure on which Defendant bases its calculations. Abel represents that the total amount of block-billed based hours is approximately $175,000, *see* Abel Declaration at 6, but based on Defendant's requested award of $85,350.25, and its methodology in reaching that figure (an approximate 50% reduction), it appears to the Court that the base figure is $170,700.50.

### III. Conclusion

In accordance with the foregoing and based on these findings of fact and conclusions of law, I find that Citicorp Trust Bank, FSB's Motion for Attorneys' Fees and Supporting Memorandum of Law (Doc. No. 118; Motion) is due to be **GRANTED, in part, and DENIED, in part.** I hold that Defendant is entitled to a fee award, but, for the reasons discussed above, that the Defendant's proffered award should be reduced. Accordingly, I hold that Defendant is entitled to a fee award of **$61,452.18.**

Accordingly, it is hereby **ORDERED:**

1. Citicorp Trust Bank, FSB's Motion for Attorneys' Fees and Supporting Memorandum of Law (Doc. No. 118; Motion) is **GRANTED, in part, and DENIED, in part.**

2. Defendant is entitled to a fee award of **$61,452.18.**

3. The Clerk of the Court is directed to enter an Amended Judgment in favor of Defendant Citicorp Trust Bank, FSB and against Plaintiff M. Gibson Durden, individually and as Trustee for the M. Gibson Durden Charitable Remainder Unit Trust in accordance with this Order.